JOHN C. ANDERSON, administrator of JAMES A. ANDERSON, deceased,

*v.*

THE SUPREME COUNCIL CATHOLIC BENEVOLENT LEGION et al.

[Decided April 24th, 1905.]

The charter of a beneficial association provided that its object was to establish a benefit fund for the families or dependents of members as they shall direct, and a by-law declared that on the death of one or more beneficiaries prior to the death of the member, if no change of beneficiary should have been made, the share or shares to which such beneficiary or beneficiaries would have been entitled shall be paid to the beneficiary's legal representative, to be distributed to his or her heirs-at-law.—*Held*, that where a member of such order died after the death of his wife, who was named as his beneficiary, without appointing a new beneficiary, the *heirs of the wife at the time of the member's death were entitled to the fund.*

———

Heard on decree of interpleader, statements of claim, and stipulation.

*Mr. Philip L. Daly, Mr. Freeman Woodbridge* and *Mr. William Newcorn,* for the complainant.

*Mr. Thomas S. Anderson* and *Mr. John P. Owens,* for the defendants.

EMERY, V. C.

James A. Anderson was a member holding a benefit certificate in the Catholic Benevolent Legion, a benevolent association organized under the laws of the State of New York. The certificate was payable to his wife, Rosana, who predeceased him, and no new beneficiary having been designated, the question is to whom the fund is payable. By the certificate, the Legion agreed "to pay out of its benefit fund to Rosana Anderson, wife, a sum not exceeding $1,000, according to the provisions of law governing said fund, upon the death of said member in good standing, provided he shall not have substituted another beneficiary." By the charter of the association, one object was to establish a benefit fund, from which, on the death of a member, a sum not exceeding $5,000 "shall be paid to the family or dependent of such member as he shall have directed." The constitution also declared one of the objects to be the payment, on the death of a member, from the benefit fund, of a sum not exceeding $5,000 " to his legally designated beneficiary or beneficiaries." The by-laws provided:

"Sec. 4. In the event of the death of one or more beneficiaries prior to the death of the member, and no change of beneficiary shall have been made, as provided by the laws of the Legion, the share or shares to which said beneficiary or beneficiaries would have been entitled shall be paid to the legal representative of the deceased beneficiary, to be distributed to his or her heirs-at-law, according to the law of the state or commonwealth in which he or she resided."

Rosana Anderson, the beneficiary, died February 16th, 1903, and on February 25th, 1903, her husband, James A. Anderson, took out letters of administration on her estate. He continued payments as a member until his own death in January, 1904. His father, John C. Anderson, the complainant, took out letters of administration on the son's estate on January 15th, 1904, and the defendant, John P. Owens, was appointed substitutionary administrator of the wife's estate on February 5th, 1904. The administrators of the husband and of the wife each demanded payment from the Legion of the amount of the certificate, and the complainant, as administrator of the husband, filed his bill

for the payment of the money against the Legion to enjoin payment to the administrator of the wife, who is also made a party defendant, together with Bridget Burke, the mother, and Julia Burke, the sister of the wife, her heirs-at-law and next of kin. The husband and wife left no children. The Legion, admitting its liability to pay the money due on the certificate, applied by petition in the suit to pay the money into court and for a decree of interpleader between complainant and defendant under the practice approved by Vice-Chancellor Green in *Meyers* v. *Schuman, 31 Atl. Rep. 460 (1895)*, and since followed.

. It does not appear by the stipulation as to facts that either the father or the defendants Bridget and Julia Burke were, at the time of James C. Anderson's death, members of his immediate family or dependents on him, and at the hearing it was insisted by the opposing claimants that a payment to either the father of the husband or the mother and sister of the wife as "heirs-at-law" of the wife under the certificate would be invalid under the clause of the charter requiring payment to be made "to the family or dependent of the member as he shall have directed." But in associations of this kind the word "family," like that of "relative," has a very extensive scope, and has been held to include relatives or connections, both by blood and marriage. And while a valid objection that the payment, although authorized by the by-law, is not within the charter, might avail the association if it contested either or both payments, yet the money being paid into court by the association as due on the contract expressed in the certificate, the rights of the parties to the payment under the certificate, as supplemented by the by-laws, should now be determined without inquiring whether these went beyond the charter. Both these points were decided in *Tepper* v. *Royal Arcanum, 61 N. J. Eq. (16 Dick.) 638 (Court of Errors and Appeals, 1900)*. The charter may, of course, be considered as affecting the construction of the by-law or certificate. Under certificates of this character issued by benevolent associations the right of the payment is a contractual right only, and depends on an appointment or designation under the certificate (supplemented, if need be, by the charter or by-laws), and is not a vested right of property in the ap-

pointee named in the certificate. *Golden Star Fraternity* v. *Martin,* 59 *N. J. Law* (*30 Vr.*) *207, 215* (*Court of Errors and Appeals, 1896*), is the leading case in this state as to the nature of the right. The original beneficiary named in the certificate having died, and no change of the beneficiary having been made, according to the rules of the association, the by-law providing for this contingency comes into operation, and the amount of the certificate is to be paid "to the legal representative of the deceased beneficiary, to be distributed to her heirs-at-law, according to the law of the state [New Jersey] in which she died." By-laws of this character are meant apparently to avoid the inequity pointed out in *Golden Star Fraternity* v. *Martin, supra,* of a retention of the money, as well as the premiums, by the association, if the member after the death of the beneficiary failed to make any other designation. In such contingency the money could not be made payable to the member himself, or to his legal representative for the benefit of his estate, for such a provision, either by the contract or charter, would be void, as creating an ordinary life insurance policy. *Golden Star Fraternity* v. *Martin, supra, p. 213.* One object of the by-laws was to indicate the person upon whose receipt of the benefit the association should be discharged from further payments or claim, and the legal representative of the beneficiary referred to in the by-law must be the person who had that character at the time of the payment. In this case the substituted administrator of the wife is therefore the person who is entitled legally to receive the payment. This payment to him, however, is not in the nature of property received for the benefit of the wife's estate, but is made upon a special trust for distribution to the persons specially designated by the by-law as the substitutionary beneficiaries, and if these persons are parties to the suit their rights to the fund may now be declared. The only persons claimed to be the substituted beneficiaries as heirs-at-law of the wife are the husband on one side and the mother and sister of the wife on the other, and these claimants are all represented in the suit. Their rights to the fund in court should therefore be decided. The whole case comes down to the question as to who were the "heirs-at-law" of the beneficiary for the purpose of receiving

payment under this by-law. Words of this character, designa-
ting classes of persons to take under these contracts, have uni-
formly received a liberal construction (*Tepper* v. *Royal Ar-
canum, supra*), and if the question related to the succession to
a property right to which on the death of the wife her husband
or her next of kin were at once entitled under the instrument,
then under this rule of construction the word "heir-at-law"
might fairly be taken to mean the person entitled by law to
receive the benefit of her personal property on her death.
*Leavitt* v. *Dunn, 56 N. J. Law (27 Vr.) 309* (*Court of
Errors and Appeals, 1893*). But in this case the words "heirs-
at-law of the beneficiary" are used only as designations of
the persons who are, at the death of a member, to receive
the benefit of a payment, to which the wife had no prop-
erty right, and the precise question arising : for decision is
whether the persons designated as heirs-at-law must answer
the description of "heirs of the wife" at the time of the
member's death, or whether they must answer the description at
the time of the wife's death. If the description applies to the
time of the death of the member, the member himself is, of
course, excluded as a substituted beneficiary. In my judgment,
the by-law is to be construed as directing payment to be made
on the death of the member to those who then answer the de-
scription of her "heirs-at-law." It is not a will or other instru-
ment conveying property which we are now construing, where
property is given with a substitutionary bequest, but a contract
which is essentially a contract to give benefits to some then
living persons, as persons sustaining certain relations, and the
designation as "heirs-at-law" of the beneficiary should not there-
fore relate back to the time of her death, as if property had been
given to her to be vested at that time for the purposes of succes-
sion. The time to which the designation applies is, I think,
necessarily fixed as the time of the death of the member by the
essential nature of the transaction, including the charter, con-
stitution, by-laws and the certificate or contract. The contract
should be construed so that all of these may stand, and any other
construction would, I think, make the whole contract void. The
association could not legally have provided that if no beneficiary

was substituted, then the payment should be made to the member, for such provision would have been void, as creating a life insurance policy; and equally invalid, I think, would have been a provision that if no other beneficiary was named, the payment should be made to the legal representative of the deceased beneficiary for the benefit of those persons entitled to her estate on her death. This also would have made the right to the payment an absolute property right in her administrator on her death, as in a life insurance policy. The general object of these appointments or designations of beneficiaries, and the feature which distinguishes them from ordinary life insurance policies, is that they are intended to be made, not for the increase of the estates of either the deceased member or the deceased beneficiary, but for the benefit of some of the dependents or members of the family of either, and in order that the certificates may be valid, the persons to receive the benefit must, I think, be living at the death of the member. And while there may perhaps have been in this case misapprehension of his rights, which may have led the member to refrain from changing the beneficiary, yet the result, which must depend solely on the contract for payment seems to me the only construction of the contract and by-law which is reasonable or will make the contract valid. If a member under this form of by-law could add to the estate either of himself or his wife by the mere failure to designate another beneficiary than the wife, then a method would seem to have been devised by which a purely life insurance policy to a member can be issued by benevolent associations organized solely for the purpose of benefiting certain persons (families or dependents) who survive them. This would radically change their whole character.

I will advise a decree that the defendants Bridget Burke and Julia Burke are equally entitled to the money paid into court, but before making decree will hear the administrator of the will as to the form of the decree which should be made for the protection of his rights.